UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MPH TECHNOLOGIES OY, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| | ) No.: 1:10-CV-00684 |
| ZYXEL COMMUNICATIONS CORPORATION, ZYXEL COMMUNICATIONS, INC., NETGEAR, INC., CHECK POINT SOFTWARE TECHNOLOGIES, LTD., AND CHECK POINT SOFTWARE TECHNOLOGIES, INC., | ) ) Hon. Judge Darrah ) Hon. Magistrate Judge Cox ) ) ) ) ) |
| Defendants. | ) ) |

### DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Defendant Check Point Software Technologies, Inc. ("Check Point"), by its attorneys, answers Plaintiff MPH Technologies OY's ("MPH") Complaint as follows:

### NATURE OF THE SUIT

1. This is a suit for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code § 1 et seq. This Court has exclusive jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1338(a).

**Answer:** Check Point admits that MPH's Complaint purports to arise under the patent laws of the United States and that this Court has subject matter jurisdiction under 28 U.S.C. § 1338(a). Except as expressly admitted, Check Point denies the remaining allegations in this paragraph.

### PARTIES

2. MPH is a Finnish corporation with its principal place of business at Tekniikantie 14, 02150 Espoo, Finland.

**Answer:** Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

3.     MPH owns all right, title, interest in and has standing to sue for the infringement of United States Patent 7,346,926, entitled "Method for Sending Messages Over Secure Mobile Communication Links" and issued on March 18, 2008 by the United States Patent and Trademark Office ("the '926 Patent").  MPH is a privately held technology company that is involved in the research and development of network mobility and security and associated internet technologies.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

4.     The technologies and inventions claimed and described in the '926 patent were initially conceived and developed by Intra Secure Networks.  Intra Secure Networks (later known as Netseal Oy and Netseal Mobility Technologies) ("Netseal") was founded in 1996 in Finland and became a technology leader in the area of mobile security.  Netseal's extensive research, development and innovation efforts were funded and supported by a number of Finnish governmental agencies and well-known venture capital firms such as Fidelity Ventures.  MPH, formed by former officers of Netseal, continues to engage in the fundamental research and development in the areas of network mobility and security.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

5.     Check Point Software Technologies, Ltd. is an Israeli company with its principal place of business at 5 Ha'Solelim Street, Tel Aviv 67897.  Check Point Software Technologies, Inc., a subsidiary of Check Point Software Technologies, Ltd., is a Delaware corporation and is located at 800 Bridge Parkway, Redwood City, California 94065 (collectively "Check Point").  Check Point provides products, services and technologies in the areas of, among other things, network security and network management, and claims to provide "protection against all types of threats, reduce[ ] security complexity and lower[ ] total cost of ownership" for its customers and clients which it claims include all of Fortune 100 Companies.

**Answer:**  Check Point admits that Check Point Software Technologies, Ltd. is an Israeli company with its principal place of business in Tel Aviv.  Check Point further admits that Check Point is a subsidiary of Check Point Software Technologies, Ltd. and is a Delaware corporation located in Redwood City, California.  Check Point objects to the collective reference to Check Point Software Technologies, Inc. and Check Point Software Technologies, Ltd. collectively as "Check Point" as they are separate companies, neither of which is liable to plaintiff.  Check Point admits that it provides network security, network management, and protection against all types

of threats, reducing security complexity and lowering the total cost of ownership. Check Point denies the remaining allegations in this paragraph.

6. Check Point is doing business in this judicial district, has purposefully availed itself of the privilege of conducting business within this judicial district, has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being hailed into court in Illinois, and has purposefully directed activities at residents of Illinois. At least a portion of the patent infringement claims alleged herein arise out of or is related to one or more of the foregoing activities.

**Answer:** Check Point denies the allegations in this paragraph.

7. NETGEAR, Inc. ("NETGEAR") is a Delaware corporation with its principal place of business at 350 East Plumeria Drive, San Jose, California 95134. NETGEAR provides products, services and technologies in the areas of, among other things, network security and network management throughout the United States.

**Answer:** Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

8. NETGEAR sells products and services throughout the United States and conducts substantial business in this judicial district, including providing the products, services, technologies and/or methods accused of infringement in this judicial district. NETGEAR's products, services, technologies and/or methods have been sold and offered for sale through such retailers located in this district as Best Buy, Fry's, Micro Center, Office Depot, Radio Shack, Staples and Walmart. NETGEAR has also provided its products, services, technologies and methods through such online merchants conducting business in this district as Amazon.com, Buy.com, CDW.com, Dell.com, eSecurity, NCIZ.com, Newegg.com, PC Connection, ProVantage, TigerDirect.com and Walmart. NETGEAR has also provided its products, services and technologies in this district through such "distribution partners" or re-sellers having offices in this judicial district as ASI (Addison), D&H (Bolingbrook), Ma Labs (Glendale Heights) and Computer Dynamics of Northwest Illinois (Freeport).

**Answer:** Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

9. NETGEAR is doing business in this judicial district, has purposefully availed itself of the privilege of conducting business within this judicial district, has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being hailed into court in Illinois, and has purposefully directed activities at residents of Illinois. At least a portion of the patent infringement claims alleged herein arise out of or is related to one or more of the foregoing activities.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

10. ZyXEL Communications Corporation is a Taiwanese company with its principal place of business at Hsinchu Science and Industrial Park, Taiwan and operates 33 sales offices throughout the world, including those located in the United States.  ZyXEL Communications, Inc., a subsidiary of ZyXEL Communications Corporation, is a California corporation with its principal place of business at 1130 North Miller Street, Anaheim, California.  ZyXEL Communications, Inc. is the North American Headquarters for ZyXEL Communications Corporation.  Both ZyXEL entities (collectively "ZyXEL") provide products, services and technologies in the areas of network security and network management in the United States, claiming to be "one of the few companies in the world capable of offering complete networking solutions ranging from DSL customer premise equipment, central office equipment, Internet security appliances, switches, WLAN equipment, network-attached storage and centralized network management systems."

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

11. ZyXEL sells its products and services throughout the United States and conducts substantial business in this judicial district, including providing the products, services, technologies and/or methods accused of infringement in this judicial district.  ZyXEL's products, services, technologies and/or methods have been sold and offered for sale through such re-sellers with offices located in this district as Shartega Systems, Inc. (Hillside), OneMark LLC (Chicago), HundredRupees (St. Charles), Cr2, Inc. (Hoffman Estates), IT Solutions (Chicago), Integrated Business Group Inc. (Schaumburg), ITiliti (Chicago), VACK Inc., (Schaumburg), NetFunction, Inc. (Chicago), VLTconnect, Inc. (Chicago), Redwood Systems Group (Tinley Park), Axcell Technologies, Inc. (Riverwoods), Swift Technologies, Inc. (Elgin), CTO Networks Corporation (Mundelein), ETech Business Solutions (Chicago), I.T.  Works, Inc. (Chicago), Chicago Cyber Corp.  (Chicago), BAY Software & Consulting Inc. (Tinley Park), WubCo Security Company (Bolingbrook), Computer Renaissance (Fairview Heights).  Such products, services and/or technologies are also sold and offered through such online merchants conducting business in this district as Amazon.com, Buy.com, Dell.com, Newegg.com, Pc Connection. ProVantage, Sam's Club and TechDepot as well as ZyXEL's own online store.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

12. ZyXEL is doing business in this judicial district, has purposefully availed itself of the privilege of conducting business within this judicial district, has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being hailed into court in Illinois, and has purposefully directed activities at residents of Illinois.

At least a portion of the patent infringement claims alleged herein arise out of or is related to one or more of the foregoing activities.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

## VENUE

13.   Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

**Answer:**  Check Point admits that venue is not improper in this District, but affirmatively states that the interests and convenience of the parties would be better served by transferring this case to the Northern District of California.

## PATENT INFRINGEMENT

14.   Check Point has infringed one or more of the claims of the '926 patent through, among other activities, its manufacture, use, importation, sale and/or offer for sale of products, services, technologies and/or methods covered by one or more of the claims of the '926 patent in the United States within the meaning of 35 U.S.C. § 271(a). Such acts of infringement include making, using, marketing, distributing, providing, testing, configuring, selling and/or offering to sell in the United States and importing into the United States, but not limited to, products, services, technologies and/or methods (along with its authorizations and licenses associated with such products, services, technologies and/or methods) known as, referred to as, sold under or embodying the technologies of Check Point's VPN-1 MASS (Multi-Access Security Solution), Power - 1 Security Appliances, UTM - 1 Security Appliances, Safe@Office Appliances, VPN-1 Security Gateways, VPN- Power VSX, VPN-1 VE, VPN-1 SecureClient Mobile, Check Point Endpoint Security – Secure Access, Check Point Endpoint Security – Total Security, Check Point Security Gateways, and Check Point VPN Security Gateway Blades.

**Answer:**    Check Point denies the allegations in this paragraph.

15.   Check Point has indirectly infringed and continues to indirectly infringe one or more of the claims of the '926 patent under 35 U.S.C. § 271(b) by knowingly and actively inducing infringement of those claims. Check Point has had actual knowledge of the '926 patent and MPH's allegation of infringement against Check Point at least since May 5, 2009. Check Point has knowingly and actively induced infringement of one or more of the claims of the '926 patent through, among other things, the sale, offer for sale and importation into the United States of the accused products, services, technologies and/or methods and by advertising, marketing, distributing, providing, testing, training, configuring, installing, licensing, authorizing and instructing the use of its products, services, technologies and/or methods covered by one or more of the claims of the '926 patent. The direct infringers that are being induced by Check Point include, without limitation, users of, Check Point's products, services, technologies and/or

methods accused of infringement of the '926 patent as well as authorized re-sellers, service providers and partners for such products, services, technologies and/or methods.

**Answer:**  Check Point denies the allegations in this paragraph.

16.    Check Point has also indirectly infringed and continues to indirectly infringe one or more of the claims of the '926 patent under 35 U.S.C. § 271(c) through, among other things, the sale, offer for sale and importation into the United States of its accused products, services, technologies and/or methods and by advertising, marketing, distributing, providing, testing, training, configuring, installing, licensing and authorizing and instructing the use of products, services, technologies and/or methods, which constitute a material part of the patented inventions of one or more of the claims of the '926 patent, which Check Point knows are especially made or adapted for use in an infringement of one or more of the claims of the '926 patent and which are not a staple article of commerce suitable for non-infringing uses.  The direct infringers for Check Point's contributory infringement under 35 U.S.C. § 271(c) include, without limitation, users of Check Point's products, services, technologies and/or methods accused of infringement of the '926 patent as well as authorized re-sellers, service providers and partners for such products, services, technologies and/or methods.

**Answer:**  Check Point denies the allegations in this paragraph.

17.    NETGEAR has infringed one or more of the claims of the '926 patent through, among other activities, its manufacture, use, importation, sale and/or offer for sale of products, services, technologies and/or methods covered by one or more of the claims of the '926 patent in the United States within the meaning of 35 U.S.C. § 271(a).  Such acts of infringement include making, using, marketing, distributing, providing, testing, configuring, selling and/or offering to sell in the United States and importing into the United States including, but not limited to, products, services, technologies and/or methods (along with its authorizations and licenses associated with such products, services, technologies and/or methods) known as, referred to as, sold under or embodying the technologies of ProSafe® VPN Client Software, Dual WAN Gigabit SSL VPN Firewall, ProSafe® Dual WAN VPN Firewall with 8-port 10/100 Switch, ProSafe® VPN Firewall with 8-port 10/100 Switch, ProSafe™ VPN Firewall 8 w/8 Port 10/100 Switch, ProSafe™ VPN Firewall 8 with 4 Port 10/100 Mbps Switch, ProSafe™ 802.11g Wireless ADSL Modem VPN Firewall Router, ProSafe® Wireless-N VPN Firewall, and ProSafe® 802.11Wireless VPN Firewall 8 with 8-port 10/100 Mbps Switch.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

18.    NETGEAR has indirectly infringed and continues to indirectly infringe one or more of the claims of the '926 patent under 35 U.S.C. § 271(b) by knowingly and actively inducing infringement of those claims.  NETGEAR has had actual knowledge of the '926 patent and MPH's allegation of infringement against NETGEAR at least since May 14, 2009. NETGEAR has knowingly and actively induced infringement of one or more of the claims of the '926 patent through, among other things, the sale, offer for sale and importation into the United

States of the accused products, services, technologies and/or methods and by advertising, marketing, distributing, providing, testing, training, configuring, installing, licensing, authorizing and instructing the use of its products, services, technology and/or methods covered by one or more of the claims of the '926 patent. The direct infringers that are being induced by NETGEAR include, without limitation, users of NETGEAR's products, services, technologies and/or methods accused of infringement of the '926 patent as well as authorized re-sellers, service providers and partners for such products, services, technologies and/or methods.

**Answer:** Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

19. NETGEAR has also indirectly infringed and continues to indirectly infringe one or more of the claims of the '926 patent under 35 U.S.C. § 271(c) through, among other things, the sale, offer for sale and importation into the United States of the accused products, services, technologies and/or methods and by advertising, marketing, distributing, providing, testing, training, configuring, installing, licensing and authorizing and instructing the use of products, services, technology and/or methods, which constitute a material part of the patented inventions of one or more of the claims of the '926 patent, which NETGEAR knows are especially made or adapted for use in an infringement of one or more of the claims of the '926 patent and which are not a staple article of commerce suitable for non-infringing uses. The direct infringers for NETGEAR's contributory infringement under 35 U.S.C. § 271(c) include, without limitation, users of NETGEAR's products, services, technologies and/or methods accused of infringement of the '926 patent as well as authorized re-sellers, service providers and partners for such products, services, technologies and/or methods.

**Answer:** Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

20. ZyXEL has infringed one or more of the claims of the '926 patent through, among other activities, its manufacture, use, importation, sale and/or offer for sale of products, services, technologies and/or methods covered by one or more of the claims of the '926 patent in the United States within the meaning of 35 U.S.C. § 271(a). Such acts of infringement include making, using, marketing, distributing, providing, testing, configuring, selling and/or offering to sell in the United States and importing into the United States, including, but not limited to, products, services, technologies and/or methods (along with its authorizations and licenses associated with such products, services, technologies and/or methods) known as, referred to as, sold under or embodying the technologies of ZyWALLUSG100, ZyWALLUSG200, ZyWALLUSG300, ZyWALLUSG1000, ZyWALL 2 Plus, ZyWALL 2WG, ZyWALL 5UTM, ZyWALL 35UTM, ZyWALL 1050, and ZyWALL IPSec VPN Client.

**Answer:** Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

21.     ZyXEL has indirectly infringed and continues to indirectly infringe one or more of the claims of the '926 patent under 35 U.S.C. § 271(b) by knowingly and actively inducing infringement of those claims.  ZyXEL has had actual knowledge of the '926 patent and MPH's allegation of infringement against ZyXEL at least since April 15, 2009.  ZyXEL has knowingly and actively induced infringement of one or more of the claims of the '926 patent through, among other things, the sale, offer for sale and importation into the United States of the accused products, services, technologies and/methods and by advertising, marketing, distributing, providing, testing, training, configuring, installing, licensing, authorizing and instructing the use of its products, services, technologies and/or methods covered by one or more of the claims of the '926 patent.  The direct infringers that are being induced by ZyXEL include, without limitation, users of, ZyXEL's products, services, technologies and/or methods accused of infringement of the '926 patent as well as authorized re-sellers, service providers and partners for such products, services, technologies and/or methods.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

22.     ZyXEL has also indirectly infringed and continues to indirectly infringe one or more of the claims of the '926 patent under 35 U.S.C. § 271(c) through, among other things, the sale, offer for sale and importation into the United States of the accused products, services, technologies and/or methods and by advertising, marketing, distributing, providing, testing, training, configuring, installing, licensing and authorizing and instructing the use of products, services, technologies and/or methods, which constitute a material part of the patented inventions of one or more of the claims of the '926 patent, which ZyXEL knows are especially made or adapted for use in an infringement of one or more of the claims of the '926 patent and which are not a staple article of commerce suitable for non-infringing uses.  The direct infringers for ZyXEL's contributory infringement under 35 U.S.C. § 271(c) include, without limitation, users of ZyXEL's products, services, technologies and/or methods accused of infringement of the '926 patent as well as authorized re-sellers, service providers and partners for such products, services, technologies and/or methods.

**Answer:**  Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, therefore, denies them.

23.     The acts of infringement of the '926 patent by each of the defendants have injured MPH, and MPH is entitled to recover damages adequate to compensate it for such infringement from each defendant, but, in no event, less than a reasonable royalty.

**Answer:**  Check Point denies causing any damage to MPH and denies the remaining allegations of this paragraph as they relate to Check Point.  Check Point lacks knowledge or information

- 8 -

sufficient to form a belief about the truth of the allegations in this paragraph regarding the other named Defendants and, therefore, denies them.

24. The acts of infringement of the '926 patent by each of the defendants have injured and will continue to injure MPH unless and until this Court enters an injunction prohibiting further acts of infringement and, specifically, enjoining further use, offers for sale and/or sale of the accused products, services, technologies and/or methods of each of the defendants that are covered by the claims of the '926 patent.

**Answer:** Check Point denies causing any damage to MPH and denies the remaining allegations of this paragraph as they relate to Check Point. Check Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph regarding the other named Defendants and, therefore, denies them.

## NOTICE, KNOWLEDGE, AND WILLFULNESS

25. MPH has complied with all applicable provisions of 35 U.S.C. § 287 regarding marking and notice of the '926 patent.

**Answer:** Check Point denies the allegations contained in this paragraph.

26. Each defendant's infringement has occurred with knowledge of the '926 patent and willfully and deliberately in violation of 35 U.S.C. § 284. Each of the defendants were given actual notice of the '926 patent in or about April or May 2009 when MPH provided the '926 patent and informed them they were infringing one or more of the claims of the '926 patent. Each defendant has not taken adequate and necessary steps to avoid infringement. Instead, each defendant has continued to infringe the '926 patent in an objectively reckless manner, with complete disregard of MPH's rights in the '926 patent.

**Answer:** Check Point denies that any alleged infringement of the '926 Patent by Check Point was willful and deliberate and denies the remaining allegations of this paragraph as they relate to Check Point. Check Point lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph regarding the other named Defendants and, therefore, denies them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, MPH, asks this Court to enter judgment against each of the defendants and against their respective subsidiaries, affiliates, agents, servants, employees and all persons in active concert or participation with the defendants, granting the following relief:

    A.    An award of damages adequate to compensate MPH for the infringement that has occurred, together with prejudgment interest from the date infringement of the '926 patent began;

    B.    An award to MPH of all remedies available under 35 U.S.C. §§ 284 and 285;

    C.    A permanent injunction prohibiting further direct infringement, inducement of infringement and contributory infringement of the '926 patent; and,

    D.    Such other and further relief as this Court or a jury may deem proper and just.

**GENERAL DENIAL**

Except as expressly admitted above, Check Point denies each and every allegation of MPH's claims.

**RESPONSE TO PRAYER FOR RELIEF**

Check Point denies that MPH is entitled to any of the relief it seeks from Check Point in connection with the Complaint, including, without limitation, the relief specified in MPH's Prayer for Relief.

WHEREFORE, Check Point Communications, Ltd. respectfully requests an entry of judgment in its favor as follows:

    a.    Dismissing MPH's Complaint in its entirety with prejudice;

b.      Declaring that Check Point does not infringe and has not infringed the '926 Patent;

c.      Declaring that Check Point does not induce and has not induced infringement of the '926 Patent;

d.      Declaring that Check Point does not contribute and has not contributed to the infringement of the '926 Patent;

e.      Declaring the claims of the '926 Patent invalid;

f.      Permanently enjoining MPH, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, from alleging or charging that the '926 Patent has been infringed by Check Point under any section of 35 U.S.C. § 271;

f.      Awarding Check Point its costs, expenses and reasonable attorneys' fees under 35 U.S.C. § 285; and

g.      Granting Check Point such other and further relief as this Court may deem just and proper in the circumstances.

## AFFIRMATIVE DEFENSES

Check Point alleges and asserts the following defenses in response to the allegations of MPH's Complaint, undertaking the burden of proof as to only those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

### First Affirmative Defense

Check Point has not infringed, contributed to the infringement of, or induced others to infringe any valid and enforceable claim of the '926 Patent, either directly or indirectly, either literally or under the doctrine of equivalents, and is not liable for infringement of the '929 Patent.

**Second Affirmative Defense**

MPH's claims are barred in whole or in part because the claims of the '926 Patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

**Third Affirmative Defense**

MPH's claims are barred in whole or in part by the doctrines of laches, estoppel, waiver and/or unclean hands.

**Fourth Affirmative Defense**

MPH'ss claim for damages for the alleged infringement is barred, at least in part, for failure to comply with the requirements of 35 U.S.C. § 287.

**Fifth Affirmative Defense**

MPH's claims are barred by the doctrine of prosecution history estoppel based on statements, representations and admissions made during prosecution of the patent application resulting in the '926 Patent.

**COUNTERCLAIMS**

For its Counterclaims against MPH Technologies OY ("MPH"), Check Point Communications, Ltd. ("Check Point") states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.   Check Point is a California corporation with its principal place of business at 1130 North Miller Street, Anaheim, California.

2.   Upon information and belief, MPH is a Finnish corporation with its principal place of business at Tekniikantie 14, 02150 Espoo, Finland.

3.   These Counterclaims arise under the Patent Act, 35 U.S.C. §§ 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  Jurisdiction in this Court is proper under 28

U.S.C. §§ 1331, 1338(a) and 2201(a).

4. Venue is proper in this judicial district for these counterclaims under 28 U.S.C. §§ 1391 and 1400.

## CONTROVERSY

5. MPH has sued Check Point, among others, claiming to own all right, title and interest in United States Patent 7,346,926 ("the '926 Patent") with standing to sue for the infringement of the '926 Patent, and alleging infringement of the '926 Patent by Check Point, among others.

6. Check Point is not liable for any infringement of a valid and enforceable claim of the '926 Patent.

7. MPH's allegations give rise to a case of actual controversy as to whether Check Point is liable for any infringement of a valid and enforceable claim of the '926 Patent, which is within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

## COUNT I

### Declaratory Judgment of Non-Infringement of the '926 Patent

8. Check Point repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 7 of these Counterclaims.

9. MPH has alleged in its Complaint that Check Point has infringed one or more claims of the '926 Patent.

10. Check Point has not infringed, contributed to the infringement of, or induced others to infringe any valid and enforceable claim of the '926 Patent, either directly or indirectly, either literally or under the doctrine of equivalents, and is not liable for infringement of the '926 Patent.

11.     Check Point seeks, and is entitled to, a declaration from this Court that it has not infringed and does not infringe any valid and enforceable claim of the '926 Patent under 35 U.S.C. § 271.

## COUNT II

### Declaratory Judgment of Invalidity of the '926 Patent

12.     Check Point repeats and realleges, as if fully set forth herein, the allegations of Paragraphs 1 through 11 of these Counterclaims.

13.     Each claim of the '926 Patent is invalid for failing to comply with the requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112.

14.     Check Point seeks, and is entitled to, a declaration from this Court that each claim of the '926 Patent is invalid.

## PRAYER FOR RELIEF

WHEREFORE, Check Point Communications, Ltd. respectfully requests an entry of judgment in its favor as follows:

a.     Dismissing MPH's Complaint in its entirety with prejudice;

b.     Declaring that Check Point does not infringe and has not infringed the '926 Patent;

c.     Declaring that Check Point does not induce and has not induced infringement of the '926 Patent;

d.     Declaring that Check Point does not contribute and has not contributed to the infringement of the '926 Patent;

e.     Declaring the claims of the '926 Patent invalid;

f.     Permanently enjoining MPH, its officers, agents, servants, employees, attorneys

and those persons in active concert or participation with them, from alleging or charging that the '926 Patent has been infringed by Check Point under any section of 35 U.S.C. § 271;

f.      Awarding Check Point its costs, expenses and reasonable attorneys' fees under 35 U.S.C. § 285; and

g.      Granting Check Point such other and further relief as this Court may deem just and proper in the circumstances.

## DEMAND FOR JURY TRIAL

Check Point hereby demands a trial by jury on all issues so triable.

Dated:  May 17, 2010

Respectfully submitted,

By: /s/James T. Hultquist
James T. Hultquist (IL Bar No. 6204320)
Raven Moore (IL Bar No. 6280665)
REED SMITH LLP
10 South Wacker Drive
Chicago, IL  60606-7507
Telephone:   +1 312 207 1000
Facsimile:    +1 312 207 6400

*Counsel for Check Point Software Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to counsel of record.

    /s/ James T. Hultquist_____

US_ACTIVE-103729257.1-JTHULTQU